UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHANZ X. SANTOS, ppa, DENISE COLON, DENISE COLON, Individually, and JESUS SANTOS,<br><br>Plaintiffs,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, REGENT HOME DELIVERY, AGNILIZ ACOSTAS, and RAUL SANTOS,<br><br>Defendants | C.A. No.: 03-cv-12210-MLW |

**PLAINTIFFS' OPPOSITION TO DEFENDANT, BOB'S DISCOUNT FURNITURE'S, MOTION FOR SUMMARY JUDGMENT**

**FACTS**

On March 30, 2002 the minor Plaintiff (Johanz Santos), age seven, was playing baseball with his older cousins in front of 27 Federal Street in Springfield, MA. Denise Colon, Johanz's mother, was watching her son from the apartment window (Exhibit A). At the time, Bob's Discount Furniture's (Bob's Discount) employees were making a delivery to 27 Federal Street (Exhibit B: pages 1, 5, 8, 15-17). The area in front of 27 Federal Street was a clearly marked "No Parking" Zone with "No Parking" signs posed along the street (Exhibit B: pages 15-17). The employees of Bob's Discount (Robert Burrus and Kenrick Forde) parked the Bob's Discount truck in front of 27 Federal Street in a "No Parking" Zone. Bob's Discount company had safety policies forbidding employees from parking their vehicles in no parking areas to deliver furniture (Exhibit D pages 1, 5, 8-12). Bob's Discount's employees parked the truck illegally knowing this

was a no parking area. The truck was parked in violation of the law and the company's safety policies. The company considered this type of conduct a violation of its safety policies and cause for disciplinary action (Exhibit D: pages 68-70). While the truck was illegally parked, its employees continually carried furniture form the truck into the building (Exhibit B: pages 17-19).

A vehicle driven by the Defendant Raul Santos on Pearl Street approached the T intersection with Federal Street and then turned left onto Federal Street. Raul Santos's visibility of the area in front of 27 Federal Street where the children were playing was completely obstructed by the illegally parked truck (Exhibit E: pages 1, 6, 7, 24). As Raul Santos drove past the truck his visibility of any pedestrian coming from the sidewalk in front of the truck was completely obstructed. Similary, the visibility of Johanz Santos coming from the sidewalk in front of the truck was obstructed (Exhibit F: page 17). As Raul Santos drove past the truck on his right, Johanz Santos came from the front of the truck and was struck by Raul Santos. Neither Johanz Santos nor Raul Santos could see each other due to the illegally parked truck (Exhibit F: page 17). Bob's Discount's employees, Burrus and Forde, have testified that parking the truck illegally contributed to cause the accident (Exhibit C: pages 74-75 and Exhibit C: pages 29-31). Similarly, Raul Santos testified that the illegally parked truck contributed to cause the accident and that if the truck was not illegally parked the accident would not have happened (Exhibit E: pages 26-27). As a result, Johanz Santos suffered a serious brain injury resulting in permanent partial cognitive deficits requiring ongoing medical treatment.

**ARGUMENT**

**I.     Introduction**

Summary judgment is appropriate and "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  F. R. C. P. 56 (c) (2005). Additionally, "the district court must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted).  Finally, "[s]ince tort actions generally encompass a multitude of factual issues and abstract concepts that become elusive when applied to varying concrete factual stipulations, such actions are usually not appropriate for disposition by summary judgment."  *Hughes v. American Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976). Upon a review of the evidence thus far discovered in the present case, the Defendant's lack of entitlement to a judgment as a matter of law grows abundantly clear.

Defendant's entire argument turns on antiquated law distinguishing a "condition" from a "cause," claiming that its agent's action of parking a delivery truck in a no parking zone constitutes the former and relieves the Defendant of liability.  However, under current Massachusetts law, "[t]he distinction between a cause and a condition is now *almost entirely discredited* and if it has any validity at all, it must refer to the type of case where the forces set in operation by the defendant have come to rest *in a position of apparent safety*, and some new force intervenes."  *Curtin v. Wiggins*, 36 Mass. App. Ct. 933, 934-935 (1994) (emphasis added) (quoting *Lawrence v. Kamco*, 8 Mass. App. Ct.

854, 857 (1979) (internal quotations omitted)). Moreover, "[b]y its very definition, a condition is a factor that no reasonable jury could find to be a proximate cause of the injuries alleged." *Id.* at 935. In presenting its motion for summary judgment, Defendant misinterprets the case law on this point; a proper reading of the authorities dictates the denial of the Defendant's motion.

**II.    A jury could rationally find from the evidence that the Defendant's ongoing conduct in illegally parking its delivery truck in the no parking zone was a proximate cause of Johanz Santos' injuries.**

Although the Defendant erroneously labels the location of its truck as a "condition" of the incident, controlling case law on the distinction between a "condition" and a "cause" fails to support this contention. Defendant cites numerous cases which discuss this distinction, all of which are inapposite to the facts of the present claim. *See Falvey v. Hamelburg*, 347 Mass. 430 (1964) (vehicle's illegal registration bore no rationally permissible causal relation to the plaintiff's injury); *Foley v. Boston Consolidated Gas Co.*, 332 Mass. 572 (1955) (evidence insufficient to demonstrate the causal relationship between trench in the street and pedestrian accident; effect of trench's presence on actions of plaintiff and defendant "is a matter of speculation"); *Kelly v. Hathaway Bakeries*, *Inc.*, 312 Mass. 297 (1942) (Where a vehicle was illegally parked askew on the street, "there was no evidence to warrant a finding that the manner of parking bore a causal relation to the accident . . . ." particularly in light of the fact that "defendant's truck had ceased to obstruct the plaintiff's view of the [injuring] automobile when that automobile was at least seventy feet away, and going so slowly that it could have been stopped in a short distance."); *Burke v. Durland*, 312 Mass. 291 (1942) (delivery driver's violation of parking ordinance had no causal relationship to injury

occurring immediately after driver had shooed children away and moved his truck to resume deliveries); *Falk v. Finkelman*, 268 Mass. 524 (1929) (illegal duration of defendant's parking not an "contributing cause of the accident"). In none of the cited cases does a rational relationship between the cause of the injury and the Defendant's violation of the law exist.

In the present case, however, strong evidence exists for the trier of fact to conclude that the illegal parking of the Defendant's truck was a contributing cause of the injury. *Cf. Rea v. Checker Taxi Co.*, 272 Mass. 510, 512-513 (1930) (jury could have reasonably found that taxi driver's disregard for one-way signs on street was a "contributing cause of the accident" and "not merely an attendant circumstance or a condition . . ."). "'[W]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.'" *Lawrence v. Kamco, Inc.*, 8 Mass. App. Ct. at 858 (quoting Restatement (Second) of Torts § 442B (1965)).

The developed body of evidence indicates that the Defendant's conduct was a contributing cause of the Plaintiff's injuries. First, the driver of the car that hit Johanz Santos, Raul Santos, testified that he could not see the minor Plaintiff before the accident, indeed that the Defendant's truck "was blocking my view completely." (Exhibit E: page 24). Mr. Santos further testified that, had the Defendant's truck not been parked illegally at that location, he probably would have seen the minor Plaintiff and probably would have avoided the accident. *Id.* at 26-27.

Second, Stephen R. Benanti, an expert in accident reconstruction who Johanz Santos expects to testify at trial, inspected the scene of the collision thoroughly, reconstructing the collision to reach an expert opinion as to its cause. His comprehensive report concludes:

> It is my opinion within a reasonable degree of scientific certainty that the illegally parked Bob's Discount Furniture truck was the reason Raul Santos did not see Johanz Santos or the other children playing in front of the building at #27 Federal Street or Johanz Santos entering Federal Street.
>
> It is my opinion within a reasonable degree of scientific certainty that the illegally parked Bob's Discount Furniture truck was the reason Johanz Santos did not see the Santos Buick approaching Federal Street from Pearl Street before Johanz Santos entered Federal Street.
>
> It is my opinion within a reasonable degree of scientific certainty that the illegally parked Bob's Discount Furniture truck was a substantial contributing factor causing this collision. If the truck was not parked in this location both the operator of the vehicle [Raul Santos] and the pedestrian [Johanz Santos] would have been able to see each other and the collision could have been avoided.

(Exhibit F: page 17).

Finally, the most credible evidence that the illegal parking was a contributing cause of the collision consists of the testimony of the Defendant's agents themselves. In this case, the Defendant admits its agents parked the truck in a no parking zone in violation of the law. Moreover, the Defendant's agents left the truck illegally parked repeatedly to deliver the furniture. The negligent conduct of the Defendant's agents in leaving the truck illegally parked as they continued to deliver the furniture, as well as the nature of that negligence, present substantial evidence of the causal role that activity played in the accident.

At his sworn deposition, the Defendant's agent, Robert Burrus, admitted that he saw a group of children playing in front of 27 Federal Street when he parked the truck on

the street in front of the building to make the delivery. (Exhibit C: page 57). Moreover, he admitted that leaving the truck in a "no parking" zone would have been a violation of the law and that parking in that location created an obstruction for any passing drivers, inhibiting their ability to see pedestrians who might enter the street from the opposite side of the truck. *Id.* at p. 72. Finally, Defendant's agent admitted that this obstruction contributed to the collision's causation. *Id.* at 74-75. All of these factors strongly militate against the propriety of summary judgment in this case.

  Further, the Defendant's other agent at the scene of the collision that day, Kenrick Forde, testified to facts suggesting that parking of the delivery truck was a continually negligent activity. He testified that the truck was parked illegally in front of 27 Federal Street, and that he and Mr. Burrus knew of that illegality. (Exhibit B: page 15-19). Mr. Forde noted that the delivery took more than one hour and multiple trips from the truck to complete, as Mr. Burrus stayed in the customer's residence and Mr. Forde carried the delivery inside. *Id.* at 17-19. Most importantly, Mr. Forde opined that the Defendant's illegally parked truck obstructed visibility at that location and that the collision would not have occurred if the truck had been legally parked elsewhere. *Id.* at 29-31.

  Lastly, the deposition testimony of the Defendant's Rule 30 (b)(6) representative, Robert Dawley, underscores the way in which the negligent activity was a contributing cause of the accident. Mr. Dawley testified that his responsibilities of oversight of loss control for the Defendant included the investigation of accidents (Exhibit D: pages 8-12). He admitted that the Defendant had a safety policy prohibiting its delivery drivers from parking illegally. *Id.* at 68-70, 76. Violation of this safety policy constitutes grounds for disciplinary action. *Id.* Additionally, Mr. Dawley testified that the Defendant's delivery

drivers were expected to adhere to a safety policy requiring them to look for traffic signs. *Id.* at 70.  All of these facts speak to the negligence of the Defendant's agents and its role in causing Johanz Santos's severe injuries.

Even assuming that the distinction between a condition and a cause is not discredited in a case like the one at bar, "[b]y its very definition, a condition is a factor that no reasonable jury could find to be a proximate cause of the injuries alleged." *Curtin*, 36 Mass. App. Ct. at 935.  In light of the fact that, for purposes of summary judgment, the court must resolve all reasonable inferences in favor of the non-moving party, *see Fleet National Bank v. H&D Entertainment*, 96 F.3d 532 (1996), the facts uncovered thus far collectively mandate a single result: in light of not only the foreseeability of nearby children entering Federal Street, but also the Defendant's combined acts of negligence related to the parking of the delivery truck in violation of the law and of Defendant's company policy, a trier of fact would be warranted in reasonably finding that the actions of Defendant's agents proximately contributed to cause the accident.  *Cf. Matranga v. West End Tile Co., Inc.*, 357 Mass. 194, 197 (1970).  Any lingering doubts to this end, for the purposes of the present motion, must resolve in favor of the non-moving party.  *See Fleet National Bank*, 96 F.3d at 537.  The Defendant is not entitled to judgment in its favor as a matter of law.

### III.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court DENY Defendant's motion for summary judgment.

Dated:   May 6, 2005

The Plaintiffs,
By Their Attorneys,

/s/David P. Angueira

Edward M. Swartz, BBO# 489540
David P. Angueira, BBO# 019610
SWARTZ & SWARTZ
10 Marshall Street
Boston, Massachusetts 02108
(617) 742-1900

## CERTIFICATE OF SERVICE

I, David P. Angueira, do hereby certify that I have served a copy of the within Plaintiff's Opposition to Defendant, Bob's Discount Furniture's, Motion for Summary Judgment upon the Defendant, Plaintiff's Concise Statement of Material Facts With Existing Genuine Issues to be Tried, Affidavit of Counsel and Plaintiff's Request for Hearing by means specified herein, to all counsel, to wit:

*Via Electronic Mail:*
Richard F. Faille, Esq.
Faille, Birrell & Daniels
22nd Floor
1414 Main Street
Springfield, MA 01144

/s/David P. Angueira

David P. Angueira, BBO# 019610

Dated: May 6, 2005